IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANNA MANZO, individually and on behalf of ANNA'S CAFÉ PLACE, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| VILLAGE OF WESTCHESTER; PAUL GATTUSO, in his individual and official capacity as former President of the Village of Westchester; FRANK PERRY, in his individual and official capacity as Village Trustee and current President of the Village of Westchester; BARBARA BRANDT, in her individual and official capacity of Village Trustee; ANGELO CALCAGNO, in his individual and official capacity as former Village Trustee; CATHY KURATKO, in her individual and official capacity of Village Trustee; TRACY MARKEY, in her individual and official capacity of Village Trustee; ROBERT MORALES, in his individual and official capacity of Village Trustee; NICK STEKER, in his individual and official capacity of Village Trustee; EVLYN SLAVIC, in her official capacity; and MELISSA HEADLEY, in the capacity of Economic Development/Community Development Director of the Village of Westchester, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

NOW COMES, the Plaintiff, Anna Manzo, individually and on behalf of Anna's Café

Place, LLC, by and through her attorneys, Anthony J. Peraica of Anthony J. Peraica &

Associates, Ltd. and Donna More of Fox Rothschild LLP, complains against the Defendants, the

Village of Westchester, and its officials, Frank Perry, Barbara Brandt, Cathy Kuratko, Tracy

Markey, Robert Morales, Frank Perry, Nick Steker, and Melissa Headley, in their individual and

1

official capacities, former Village officials Paul Gattuso and Angelo Calcagno, in their individual and official capacities, and newly elected official Evlyn Slavic, in her official capacity only, and in furtherance of the complaint state as follows:

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, in that this is a civil action arising under the laws of the United States and raises constitutional issues. This Court also has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. §1367.

2. Venue is proper in this Court under 28 U.S.C. §1391(b). Plaintiff and individual Defendants residences, Plaintiff's business, and the Governmental Unit are all located in this district. Also, the events giving rise to this litigation occurred in this district.

## PARTIES

3. Plaintiff Anna Manzo the sole owner of Anna's Café Place, LLC and she is a resident of the Village of Westchester, County of Cook, State of Illinois.

4. Michael Manzo is general manager of Anna's Café Place, LLC.

5. Anna's Café Place, LLC is a limited liability company incorporated and organized in the State of Illinois with its principal place of business at 10261 W. Roosevelt Road, Westchester, Illinois 60154. When referring to Anna's Café Place, LLC, by location, it will be hereinafter referred to as "Anna's Roosevelt."

6. Defendant Village of Westchester is an Illinois municipal public entity duly organized and existing under the laws of the State of Illinois.

7. Defendant Paul Gattuso, during the course of the events at issue, was the President of the Village of Westchester and is being sued in his individual and official capacities; he was not re-elected in April 2021.

8. Defendant Frank Perry, during the course of the events at issue, was a Village Trustee in the Village of Westchester and is being sued in his individual and official capacities; he has subsequently been elected in April 2021 as President of the Village of Westchester.

9. Defendant Barbara Brandt is a Village Trustee in the Village of Westchester and is being sued in her individual and official capacities.

10. Defendant Angelo Calcagno, during the course of events at issue, was a Village Trustee in the Village of Westchester and is being sued in his individual and official capacities; he was not re-elected in April 2021.

11. Defendant Cathy Kuratko is a Village Trustee in the Village of Westchester and is being sued in her individual and official capacities.

12. Defendant Tracy Markey is a Village Trustee in the Village of Westchester and is being sued in her individual and official capacities.

13. Defendant Robert Morales is a Village Trustee in the Village of Westchester and is being sued in his individual and official capacities.

14. Defendant Nick Steker is a Village Trustee in the Village of Westchester and is being sued in his individual and official capacities.

15. Defendant Evlyn Slavic is a Village Trustee in the Village of Westchester, as of April 2021, and is being sued in her official capacity.

16. Defendant Melissa Headley is the Economic Development/Community Development Director for the Village of Westchester and she is being sued in her official capacity.

17. Upon information and belief, all of the named defendants are residents of the Village of Westchester.

**FACTS**

18. In or about 2002, Plaintiff and other family members purchased the property, 10261 W. Roosevelt Road, Westchester, Illinois 60154, referred to in this complaint as "Anna's Roosevelt", and operated the property, under various names, over the years as a restaurant with a liquor license.

19. Plaintiff and various family members had also attempted to purchase the property next to it, at 10301 W. Roosevelt, and had entered into a contract for the property on October 31, 2002; however, the deal never went through.

20. Plaintiff and various family members attempted to purchase a parking lot on either side of "Anna's Roosevelt" but were unable to.

21. The Manzo family subsequently purchased the corner lot (formerly a McDonald's property), in or about 2007, to provide parking for Anna's Roosevelt.

22. On July 13, 2009, the State of Illinois enacted the Video Gaming Act ("VGA"). The VGA legalized the use of VGTs (*e.g.*, video poker machines or slot machines) in bars, restaurants, and other establishments with liquor pouring licenses. A VGT is an electronic game machine that allows a customer, after inserting cash, to play or simulate the play of games such as, among others, video poker, line-up, and blackjack using a video display.

23. Under the VGA, liquor establishments, truck stop establishments, fraternal establishments, and veterans' establishments can apply for a video gaming license from the Illinois Gaming Board ("IGB").

24. Under the VGA, all terminal operators (the legal entity that owns services and maintains VGTs for the placement and operation in licensed locations), licensed video gaming locations must go through a thorough background investigation and obtain licenses from the IGB. 230 ILCS 40/5.

25. No VGT may be placed in any licensed video gaming location unless the owner "has entered into a written use agreement with the terminal operator for placement of the terminals." 230 ILCS 40/25(e).

26. The VGA allows up to six VGTs at each licensed location and requires a redemption terminal at each location for patrons to redeem the tickets that are "cashed-out" of the VGTs.

27. A gaming establishment may not maintain VGTs at its place of business unless it has a valid video gaming establishment license issued in accordance with the VGA.

28. In addition to the State requirements to operate VGTs at licensed locations, the Village of Westchester has adopted certain ordinances regarding the licensing and operation of VGTs in the Village. The Ordinances are incorporated herein by reference in its entirety.

29. On or about September 11, 2013, Plaintiff's property at 10261 W. Roosevelt Road, Westchester, Illinois 60154 was organized under Anna's Café Place, LLC.

30. Anna's Roosevelt has a Class I-1 license permitting it to operate a full service restaurant and a video gaming establishment at 10261 W. Roosevelt Road in the Village of Westchester.

31. Anna's Roosevelt and its parking at the former McDonald's property are located within the Village of Westchester's Roosevelt Road Development area, set forth in the Village's Comprehensive plan.

32. In 2015, the Village of Westchester was encouraging the development of this area and reaching out to Plaintiff and the Manzo family to develop the former McDonald's property.

33. Michael Manzo worked with the Village trying to find ways to develop the former McDonald's property and have adequate parking for Anna's Roosevelt.

34. Plaintiff was also reaching out to the new owners of the adjoining property at 10301 W. Roosevelt Road to see if they would be willing to sell one of the parking lots.

35. At the insistence of the Village of Westchester, Plaintiff attempted to purchase one of the parking lots from 10301 W. Roosevelt property.

36. At the same time, Michael Manzo had obtained architectural and development plans for the McDonald's property and was discussing them with the Village.

37. On August 4, 2015, Defendant Melissa Headley, Economic Development/Community Development Director, stated that the Village had an issue with the parking lot sale, as the properties would be more out of compliance with Village parking requirements. However, the Village continued to work with the Plaintiff on the issue of parking.

38. Defendant Headley had suggested that Plaintiff and the other owner apply for a variance regarding the parking situation.

39. Negotiations and conversations occurred with the Village of Westchester about the parking issue and development of Plaintiff and the Manzo family's other property, but it all ended when the Village blocked the sale of the parking lot in 2020 to Anna's Roosevelt, and then denied the TIF Plaintiff applied for, for the former McDonald property.

40. In or about October 2020, Plaintiff, through its general manager Michael Manzo, was contacted by Jack Waters, the property owner of 1929 S. Mannheim Road, Westchester, IL, to see if they were interested in taking over Christopher's Speakeasy, a video gaming establishment, that was closed.

41. On or about November 1, 2020, Anna's Café Place LLC entered into a leasing agreement for the property previously occupied by Christopher's Speakeasy and its video gaming equipment. When referring to this location, it will hereinafter be referred to as "Anna's Mannheim."

42. Anna's Café Place LLC's lease for the 1929 S. Mannheim Road property was contingent upon obtaining a Class I-1 license from the Village of Westchester to operate the facility as a full service restaurant and a second video gaming establishment.

43. In November 2020, the Village of Westchester's Ordinance provided for liquor licenses to establishments where video gaming was the primary revenue and food and beverages were secondary (Class I licenses) or establishments where food and beverage sales were the primary revenue and video gaming secondary (Class J licenses).

44. In November 2020, the Village of Westchester allowed two class I-1 licenses, three class I-2 licenses, and no class J-1 or J-2 licenses. See Village Ordinance 5.36.130.

45. Upon information and belief, in November 2020, the two Class I-1 licenses belonged to the locations used by Anna's Café Place LLC and Christopher's Speakeasy.

46. Upon information and belief, the Village of Westchester president is also the local liquor commissioner and is supposed to keep a list of licenses issues by him. See Village Ordinance 5.36.140.

47. The Village of Westchester president, in his capacity as Local Liquor Commissioner, is to keep lists of all licenses and supervises all video gaming operations in the Village governed by the Video Gaming Act. See Village Ordinance 5.102.020.

48. The Liquor Commissioner is responsible for the investigation of applicants to determine the eligibility of applicants for location licenses and to select among competing applicants the applicants, those who best serve the interests of the Village. See Village Ordinance 5.102.020(A).

49. On or about November 15, 2020, Anna's Café Place, LLC filed a Class I-1 application for Anna's Mannheim and paid the requisite fee of $500.00.

50. Plaintiff's application for licensing for Anna's Mannheim was in conformance with the ordinances at the time of application.

51. Plaintiff's application was not put on the Village Board agenda for the November 24, 2020 meeting.

52. At the November 24, 2020 meeting, the Village of Westchester Board discussed a gaming license request for 1855 Mannheim; at which time, Defendant Trustee Perry asked if the Board was interested in gaming being brought forward; Defendant Trustee Steker asked what license was being applied for and that he was ok with gaming, but not in favor of gaming only as the concept and would like the restaurant to be the focal point; Defendant Trustee Calcagno stated he did not want to turn the town into a gaming town and would like a restaurant to be in business for a year before issuing a gaming license; Defendant Trustee Kuratko asked for projections on sales to see if the establishment would be gaming centered.

53. Also on November 24, 2020, the Village Board discussed video gaming requests at two BP Gas Stations located at 1201 Roosevelt and 825 Mannheim. These would be retail locations (not truck stops) that would have a place inside to serve liquor to customers, a prerequisite for having a video gaming location license. Trustee Perry had no issue with it; Trustee Calcagno had no issue with the concept if the location would be selling food; and Trustee Marke asked if the gaming was going to be in the gas station or food area and was informed that gaming would occur in an enclosed room in the building. The Board did not have any issues with this.

54. No vote was taken on November 24, 2020, on the matters of gaming licenses.

55. In December 2020, Plaintiff and general manager Michael Manzo learned that allegedly the Village of Westchester did not have Plaintiff's Class I-1 application for Anna's Mannheim.

56. The Village of Westchester had already cashed and deposited the application fee check that was submitted with the application.

57. On December 10, 2020, Michael Manzo contacted Defendant Headley, with the Village, to inquire as to the whereabouts of Anna's Mannheim application.

58. On or about December 10, 2020, Defendant Headley told Michael Manzo that they did not receive the application and that the packet would need to be filled out; at which time he told them about the check that was submitted with the application having been cashed and cleared.

59. Later that same day, Defendant Headley told Michael Manzo that they located Anna's Mannheim application, which included a copy of the lease, and indicated that it would be forwarded to Defendant Paul Gattuso for review.

60. Plaintiff learned that Anna's Mannheim application would not be on the Village Board December 15, 2020 agenda.

61. Anna's Mannheim application was finally placed on the January 12, 2021, Village of Westchester Board meeting agenda, however, the Board deferred discussion on it.

62. On January 12, 2021, Paul Nosek, Village Manager, advised the Village Board that in accordance with the Village ordinances, the owner of Anna's Café Place LLC wanted to open a new restaurant and gaming establishment at the former Christopher's Speakeasy location. During the Board discussion, Trustee Perry stated he was ok with the proposal it if it actually serves food and had gaming as a secondary feature. Trustee Calcagno thought it was decided that it would have to be an established restaurant for years before allowing gaming. President Gattuso wanted to look at how Lombard handles video gaming matters. No vote was taken.

63. Also at the January 12, 2021 meeting, a representative of Prairie State Gaming spoke during public commentary on behalf of the Mobile Gas Station (where it would be the terminal operator) located at 1950 Mannheim to request that the appropriate liquor license be granted that would permit gaming at the gas station. The Board deferred the matter.

64. On January 12, 2021, the Village Board still had not voted on the pending application for a restaurant with gaming at 1855 Mannheim.

65. Anna's Mannheim application was not placed on either February Village Board meeting agenda for consideration.

66. On February 9, 2021 at the Village Board Meeting, Plaintiff was represented by an attorney who spoke on its behalf that the Village Board was violating due process by holding up Plaintiff's Video Gaming and Liquor Licenses, applied for in November 2020, for Anna's Mannheim.

10

67. On or about February 10, 2021, the Village of Westchester sent Anna's Café Place LLC a Notice of Delinquency stating that they mysteriously found that there were three allegedly outstanding bills owed to the Village for Anna's Roosevelt; two bills from October 2016 and one from June 2019.

68. Despite Plaintiff's challenge that these bills were legitimate and outstanding, Plaintiff paid the alleged bills upon receipt to prevent the Village from suspending Plaintiff's business licenses at Anna's Roosevelt.

69. That same week, the Village's authority was in full force when the Westchester Fire Department showed up at Anna's Roosevelt alleging an issue with the fire alarm. The Police Department also paid a visit alleging an issue with the ATM machine. No issues were found by either the Fire Department or Police Department.

70. On or about February 24, 2021, Michael Manzo spoke with Defendant Melissa Headley, about Anna's Mannheim application and was told that the Board wanted to change the ordinances relating to liquor and gaming licenses and that it was considering that a location had to be open for two years to be eligible to apply for a gaming license.

71. On or about February 24, 2021, Michael Manzo also spoke with Defendant Paul Gattuso, Village President, about Anna's Mannheim application and Defendant Gattuso told Manzo that he has no reason to deny Anna's Mannheim application, but that the Trustees are blocking him from approving it.

72. On or about March 1, 2021, the Village of Westchester began issuing a water bill to Plaintiff for the Anna's Mannheim property.

73. Upon information and belief, neither the Plaintiff nor general manager Michael Manzo requested that the Village of Westchester change the billable party for water services at the proposed Anna's Mannheim location.

74. On March 3, 2021, Michael Manzo spoke with Defendant Headley about the Mannheim application and was told that the Village Board is contemplating changes to the video gaming licensing requirements.

75. On March 4, 2021, Michael Manzo spoke with Defendant Gattuso and learned that the Trustees were okay with giving others a gaming license but not to Manzo, his family or Anna's Café Place LLC.

76. That same day, Michael Manzo spoke with Defendant Headley and was told that the Board will not grant Anna's Mannheim application and that the Plaintiff should go elsewhere.

77. On March 9, 2021, Michael Manzo spoke with Defendant Gattuso in his office and Defendant Gattuso informed Manzo that the Board had already reached a decision that Anna's Mannheim will not get the gaming license.

78. Plaintiff has not received a formal denial of Anna's Mannheim application nor has the application fee been returned as required by Village Ordinance 5.36.080(d).

79. On March 9, 2021, the Board as a Whole met and passed amendments to the ordinances chapters 5.36.080 and 5.36.130, which (1) established new Liquor License Class K-1 and K-2 requiring that the primary business of a license be food and beverages and not video gaming and requiring that the business be in operation selling food and beverages for 2 years before applying for the license; and (2) reduced the number of licenses of Class I-1 to only one and no class K-1 or K-2 licenses at this time. The ordinance was effective immediately upon passage.

80. On or about March 10, 2021, the Village of Westchester contacted the landlord of the Mannheim property and told him that they had a possible tenant for his location, that did not need a liquor or video gaming license.

81. On or about April 5, 2021, Michael Manzo had a conversation with Defendant Headley whereby she told him Anna's Mannheim application has to be modified to not include gaming, otherwise it would be rejected.

82. On information and belief, on April 26, 2021, the Village of Westchester Liquor Commission met and approved the liquor license and gaming licenses for 4M Oil Inc., 11201 Cermak, and Westchester BP, 825 Mannheim Rd.

83. At the April 27, 2021 Board meeting, Defendant Headley stated at the open meeting that she informed the Plaintiff, through Michael Manzo, twice that Anna's Mannheim application needed to be amended or it will be rejected and no amended application had been received.

84. On May 11, 2021, the newly elected Village of Westchester Board of Trustees were sworn in.

85. Also on May 11, 2021, the Village of Westchester passed and approved an amendments to the Liquor License Classifications:

Ordinance 5.36.080 now includes:

(a) Permit fees shall be charged in accordance with the following schedule:

* * * * *

(18) Class L: Retail sale of alcoholic liquors for consumption on the premises and the retail sale of alcoholic liquor in the original package not for consumption on said premises where sold when the premises are authorized and licensed by the Village of Westchester under the Illinois Video Gaming Act to provide video

gaming. As a condition for the issuance of a Class L license, the sale of food and

beverages at the proposed licensed premises must have taken place for not less

than two years prior to the licensee's submission of the application for the license.

The annual fee for such a license shall be five thousand dollars.

* * * * *

Ordinance 5.36.130 provides for "(19) Two class L licenses at this time."

86. To date, Anna's Mannheim Class I-1 application still has not been placed on Village

Board Agenda for a vote or determination.

## COUNT I
## 42 U.S.C. 1983 Unequal Treatment In Considering Gaming Licenses

87. Plaintiff incorporates the allegations in paragraphs one (1) through eighty-six (86),

as if set forth herein.

88. Defendants have imposed higher standards in their assessment of Plaintiff's Mannheim

application for licensing as compared to requests of such licenses from gas stations or other

combined restaurants and gaming establishments.

89. On information and belief, during the pendency of Anna's Mannheim application,

Defendants have granted gaming and liquor licenses to other applicants.

90. Defendants have individually and in their official capacities prevented Anna's

Mannheim application from going forward under the Village ordinance as it stood at the time of

application and wrongfully delayed and continue to delay the process.

91. In failing to consider Anna's Mannheim application, Defendants used personal bias or

political opposition as the basis for denying Plaintiff's application and licensing.

92. Defendants treated Plaintiff less favorably than similarly situated gaming establishments and created pre-textual reasons for not allowing Plaintiff's application to move forward for a vote or consideration.

93. By virtue of the Defendants not considering Plaintiff's licensing application, the Plaintiff has suffered the following damages: loss of income, loss revenue, paying utility bills for a building that cannot be used, attorneys' fees and costs in applying for the licensing and litigating this matter. In addition, the Defendants have lost tax revenue and employment opportunities in the Village.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court:

A.      Declare and order that the Defendants to issue both the liquor and gaming licenses to Anna's Café Place LLC for Anna's Mannheim;

B.      Issue an order of injunction restraining Defendants from using the current ordinance in reviewing Anna's Mannheim application and instead use the ordinances in effect at the time of application;

C.      Award compensatory damages against Defendants in favor of Plaintiff for the delay in allowing the business to open and operate;

D.      Award Plaintiff's attorneys' fees, expenses, and costs pursuant to 42 U.S.C. § 1988(b); and

E.      Award any other and further damages and relief that this Court deems just or necessary.

**COUNT II**
**Violation of U.S. Constitution Free Exercise Clause – First and Fourteenth Amendments**

94. Plaintiff incorporates the allegations in paragraphs one (1) through eighty-six (86), as if set forth herein for Count II.

95. The forgoing actions by the Defendants constitute an unlawful impairment and burden on the rights of Plaintiff, its officers, directors, financial contributors, supporters, and customers to the free exercise of speech and assembly, in violation of the First and Fourteenth Amendments to the U.S. Constitution, pursuant to 42 U.S.C. §1983.

96. The acts or omissions alleged herein constitute reckless or callous indifference to Plaintiff's federally protected rights, entitling it to seek punitive damages against the Defendants named in their individual capacities.

97. By virtue of the foregoing violations of the First and Fourteenth Amendments to the U.S. Constitution, Plaintiff, its officers, directors, financial contributors, supporters, and customers have suffered the following damages:

    a.    Loss of free exercise of speech;

    b.    Loss of free exercise of assembly;

    c.    Expenses incurred in attempting to secure licensing; and

    d.    Expenses incurred in maintaining the Mannheim property pursuant to the lease.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court:

A.  Declare and order that the Defendants to issue licenses to Anna's Café Place LLC for the location on Mannheim;

B.    Declare and order that Plaintiff shall have the right to develop and use the Subject Property in the manner set forth under the license;

C.    Issue an order of injunction restraining Defendants from placing additional subjective criteria for the issuance of gaming and liquor licenses in the Village of Westchester, after receipt of applications;

D.     Award compensatory damages against Defendants in favor of Plaintiff;

E.     Award Plaintiff's attorneys' fees, expenses, and costs pursuant to 42 U.S.C. §
1988(b); and

F.     Award any other and further damages and relief that this Court deems just or
necessary.

### COUNT III
### Violation of U.S. Constitution Equal Protection Clause – Fourteenth Amendment

98. Plaintiff incorporates the allegations in paragraphs one (1) through eighty-six

(86), as if set forth herein for Count III.

99. When refusing to call Plaintiff's application for the licensing for a vote or consider

the application, Defendants treated Plaintiff less favorably than similarly situated gaming

establishments and created pre-textual reasons for not approving Plaintiff's application, thereby

violating the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983.

100.    The acts or omissions alleged herein constitute reckless or callous indifference to

Plaintiff's federally protected rights, entitling it to seek punitive damages against the Defendants

named in their individual capacities.

101.    By virtue of the foregoing violations of the Fourteenth Amendments to the U.S.

Constitution, Plaintiff, its officers, directors, financial contributors, supporters, and customers have

suffered the following damages:

a.     Expenses incurred in attempting to secure licensing;

b.     Loss of income and revenue for the operation of the second facility; and

c.     Expenses incurred in maintaining the Mannheim property pursuant to the lease,
without allowing for usage.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court:

A.  Declare and order that the Defendants to issue licenses to Anna's Café Place LLC for the location on Mannheim;

B.   Declare and order that Plaintiff shall have the right to develop and use the Subject Property in the manner set forth under the license;

C.   Issue an order of injunction restraining Defendants from placing additional subjective criteria for the issuance of gaming and liquor licenses in the Village of Westchester, after receipt of applications;

D.   Award compensatory damages against Defendants in favor of Plaintiff;

E.   Award Plaintiff's attorneys' fees, expenses, and costs pursuant to 42 U.S.C. § 1988(b); and

F.   Award any other and further damages and relief that this Court deems just or necessary.

## COUNT IV
## Retaliation Pursuant to 42 U.S.C. §1983

102.   Plaintiff incorporates the allegations in paragraphs one (1) through eighty-six (86), as if set forth herein for Count IV.

103.   Plaintiff Anna's Café Place LLC is owned and operated by Anna Manzo.

104.   Plaintiff Anna's Café Place LLC, a female-owned company, was engaged in protected conduct in applying for the Mannheim licensing.

105.   Plaintiff has a right to contract and engage in making and terminating of contracts as well as the "enjoyment of all benefits, privileges, terms, and conditions" of such relationships.

106.   Furthermore, the Defendants collective and individually have singled out and failed to address the Plaintiff's Anna's Mannheim application because of bias against the Manzo family.

107.     On information and belief, the Defendants intentionally "lost" and held off consideration of Plaintiff's application, in order to craft an ordinance that precluded the Plaintiff.

108.     Plaintiff suffered adverse actions at the hands of the Defendants, individually and collectively, in that the licensing was applied for, delayed unjustly the business opening, not considered as applied for, not put for a vote, the fee has not been refunded, has incurred utility bills for a property that it cannot use, and has been in limbo not earning revenue for over 6 months.

109.     The damages that Plaintiff has incurred are directly related, and causally connected, to the actions or inactions of the Defendants, individually and collectively, with regard to the Liquor and Gaming License applications.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court:

A.  Declare and order that the Defendants to issue gaming and liquor licenses to Anna's Café Place LLC for the location on Mannheim;

B.  Declare and order that Plaintiff shall have the right to develop and use the Subject Property in the manner set forth under the license and as set forth in the lease;

C.  Award compensatory damages against Defendants in favor of Plaintiff;

D.  Award Plaintiff's attorneys' fees, expenses, and costs pursuant to 42 U.S.C. § 1988(b); and

E.  Award any other and further damages and relief that this Court deems just or necessary.

**COUNT V**
**Tortious Interference With Business Relations**

110.     Plaintiff incorporates the allegations in paragraphs one (1) through one hundred nine (109), as if set forth herein as Count V.

111.     Plaintiff had a reasonable expectancy of entering into a valid business relationship.

112.    Plaintiff had entered into a valid business relationship with Michael Dryden owner of the 10301 W. Roosevelt for the purchase of one of the parking lots.

113.    Each of the Defendants had knowledge or should have known about the business relationship and parking lot purchase due to communications between the parties and the Village.

114.    Each and every one of the Defendants have intentionally and unjustifiably interfered with the business relationship between the Plaintiff and Mr. Dryden by the Village encouraging the sale of the parking, then blocking its sale due to non-compliance, and the Village further recommending a variance for the property then rescinding it.

115.    Plaintiff was damaged by the denial of the parking lot sale, in that, it precluded development of the Manzo's other property (formerly a McDonald), which resulted in costs of attorneys' fees, contracting costs, architecture and development planning costs, lost time, lost income, lost revenue, and other damages.

116.    Plaintiff entered into a valid business relationship with Jack Waters by executing a lease for the property on Mannheim Road and the gaming machines located there.

117.    Each of the Defendants had knowledge of the business relationship between the Plaintiff and Jack Waters, not only because the lease was disclosed with the Mannheim application, but also through numerous appearance by Mr. Waters at Village Board meetings.

118.    Each and every one of the Defendants have intentionally and unjustifiably interfered with the business relationship between the Plaintiff and Jack Waters by delaying and refusing to consider the licensing application and intentionally altering the licensing requirements after receipt of Plaintiff's application.

119.    Plaintiff has been damaged by the Defendants, individually and collectively, in that

the Plaintiff has lost income and revenue from the second location, incurred utility bills for a facility it cannot use, incurred attorney fees and costs associated with trying to securing the licensing, attorney fees and costs for this litigation and other damages.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court:

A. Award compensatory, incidental, consequential, liquidated and punitive damages against each of the Defendants, individually and collectively, in favor of Plaintiff, in an amount to be determined at trial;

B. Award Plaintiff's attorneys' fees, expenses, and costs pursuant to 42 U.S.C. § 1988(b); and

C. Award any other and further damages and relief that this Court deems just or necessary.

Respectfully Submitted,

Anna Manzo, individually and as owner of Anna's Café Place LLC.

By: s/ Anthony J. Peraica
Attorney for the Plaintiffs

Anthony J. Peraica, ARDC #6186661
Anthony J. Peraica & Associates, Ltd.
5130 S. Archer Avenue
Chicago, Illinois 60632
(773) 735-1700
support@peraica.com

Donna More
Fox Rothschild LLP
321 N. Clark Street, Suite 1600
Chicago, Illinois 60654
dmore@foxrothchild.com